IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROVI CORPORATION, ROVI GUIDES, )
INC., UNITED VIDEO PROPERTIES, )
INC., and INDEX SYSTEMS, INC., )
                                            )
               Plaintiffs, )    Civil Action No. 11-1140 (KAJ)
                                            )
    v.                                      )
                                            )
HAIER GROUP CORP. and HAIER )
AMERICA TRADING, LLC, )
                                            )
               Defendants. )

## MEMORANDUM OPINION

Francis DiGiovanni, Esq., Chad S.C. Stover, Esq., Novak Druce Connolly Bove + Quigg LLP, 1007 N. Market Street, Wilmington, Delaware 19801; Counsel for Plaintiffs.
    Of Counsel:  Yar R. Chaikovsky, Esq., David L. Larson, Esq., Hong S. Lin, Esq.
        Jeremiah A. Armstrong, Esq., McDermott Will & Emery LLP,
        275 Middlefield Road, Ste. 100, Menlo Park, CA   94025
            Joel M. Freed, Esq., Christopher G. Paulraj, Esq., Alexander P.
        Ott, Esq., McDermott Will & Emery LLP, 500 N. Capitol Street, N.W.,
        Washington, DC 20001

M. Blake Cleary, Esq., Adam M. Poff, Esq., Monte T. Squire, Esq., Young Conaway Stargatt & Taylor, LLP, 1000 N. King Street, Wilmington, Delaware 19081; Counsel for Defendants.
    Of Counsel:  Elizabeth H. Rader, Alston + Bird LLP, 275 Middlefield Road, Ste.
        150, Menlo Park, California 94025

August 23, 2013
Wilmington, Delaware



JORDAN, Circuit Judge sitting by designation

## I. INTRODUCTION

Presently before me is a Motion to Dismiss for Lack of Personal Jurisdiction (the "Motion" or "Motion to Dismiss") filed by defendant Haier Group Corporation ("Haier Group") pursuant to Federal Rule of Civil Procedure 12(b)(2). (D.I. 48.) For the reasons that follow, the Motion will be denied.

## II. BACKGROUND

Plaintiffs Rovi Corporation, Rovi Guides, Inc., and United Video Properties, Inc., all three of which are Delaware corporations, along with Index Systems, Inc., a British Virgin Islands corporation (collectively, "Rovi"),[1] filed this patent infringement case on November 16, 2011, alleging that Haier Group, a company organized under the laws of the People's Republic of China, and Haier America Trading, LLC ("Haier America"), a New York corporation, are infringing U.S. Patent Nos. 6,701,523 (the "'523 patent") and 7,047,547 (the "'547 patent").[2]

---

[1] United Video Properties, Inc., is a wholly owned subsidiary of Rovi Guides, Inc., which in turn is a wholly owned subsidiary of Rovi Corporation. It is unclear whether Rovi Corporation, Rovi Guides, Inc., and United Video Properties, Inc. are related in some way to Index Systems Inc. The parties treat them collectively under the name "Rovi," and, for ease of reference, so will I.

[2] Index Systems, Inc., is the owner of the '523 patent and United Video Properties, Inc., is the owner of the '547 patent. Both patent owners are plaintiffs in this case, and standing is not contested. Nonetheless, I urge the parties to clarify how Rovi Corporation and Rovi Guides, Inc., have standing to sue in this case. *See Spine Solutions, Inc. v. Medtronic Sofamor Danek U.S.A., Inc.*, 620 F.3d 1305, 1317-18 (Fed. Cir. 2010)

Rovi works in digital entertainment technology solutions and provides "guidance technology, entertainment data, content protection and content networking technology to customers for use in the consumer electronics, cable and satellite, entertainment and online distribution markets to enable them to deliver a unique entertainment experience for television, movies, music and photos." (D.I. 1 at ¶11.) Haier Group owns 100 percent of Haier America Holding, a Delaware corporation, which in turn owns 55 percent of Haier America.[3] (D.I. 82 at 2-3.) Haier America is a distributer of Haier-branded electronics in the United States. And it is those products, including televisions, that Rovi alleges infringe the patents in suit.

The technology disclosed in the '523 and '547 patents is directed to programmable blocking of television and other viewable programming, as well as to a program guide schedule system and method. (D.I. 1 at ¶¶ 17, 26.) Rovi alleges that Haier Group and Haier America have infringed and are infringing the patents in suit "directly and/or indirectly, by making, using, offering for sale, selling in the United States, and/or importing into the United States without authority" the allegedly infringing products. (D.I. 1 at ¶¶ 18, 27.)

---

(explaining that a parent corporation does not have standing to sue just because its subsidiary holds a patent).

[3] The other 45 percent is owned by JMD Holdings, a company that specializes in distributing household appliances in the United States. It has not been named as a party in this suit. (D.I. 82 at 2-3.)

Haier Group filed its Motion to Dismiss on April 17, 2013, arguing that this Court cannot properly exercise personal jurisdiction over it under Delaware's long-arm statue, 10 Del. C. § 3104, or consistently with the requirements of the Due Process Clause of the United States Constitution. (D.I. 49 at 4-5.) The Motion has been fully briefed and is ready for disposition.

## IV.   DISCUSSION[4]

Personal jurisdiction comes in two varieties: general and specific. General jurisdiction permits suit against a party on any cause of action, based on the party's contacts with the forum state being "continuous and systematic." *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 415 (1984). Specific jurisdiction, by contrast and as its name indicates, allows jurisdiction for specific causes of action tied to particular contacts that the defendant has had with the forum. The test for specific jurisdiction is typically in three parts: "(1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities,

---

[4] "[T]he burden of demonstrating the facts that establish personal jurisdiction," falls on the plaintiff, *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002), and "once a defendant has raised a jurisdictional defense," the plaintiff must "prov[e] by affidavits or other competent evidence that jurisdiction is proper," *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996). When deciding a motion to dismiss for lack of personal jurisdiction on a paper record, "a plaintiff need only to make a *prima facie* showing that defendants are subject to personal jurisdiction." *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003). And "a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *Id.*

and (3) assertion of personal jurisdiction is reasonable and fair." *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008).

Under Federal Rule of Civil Procedure 4(k), a District Court will usually exercise personal jurisdiction according to the law of the state in which it sits. *Cf.* Fed. R. Civ. P. 4(k)(1)(A) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant ... who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located ... ."). I thus consider whether Rovi has produced facts sufficient to satisfy the two-part jurisdictional analysis required under Delaware law. *Intel Corp. v. Broadcom Corp.*, 167 F. Supp. 2d 692, 700 (D. Del. 2001). The first steps asks whether the language of Delaware's long-arm statute, 10 Del. C. § 3104(c), reaches Haier Group; the second considers whether subjecting Haier Group to jurisdiction in Delaware would comport with due process. *Broadcom*, 167 F. Supp. 2d at 700 (citing *Intel Corp. v. Silicon Storage Tech., Inc.*, 20 F. Supp. 2d 690, 694 (D. Del. 1998)).[5]

---

[5] When the question before the court is the exercise of personal jurisdiction over an out-of-state accused infringer, the law of the Federal Circuit, "rather than that of the regional circuit in which the case arose," is applicable. *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995). The Federal Circuit has instructed that, "in interpreting the meaning of state long-arm statutes, we elect to defer to the interpretations of the relevant state and federal courts, including their determinations regarding whether or not such statues are intended to reach to the limit of federal due process." *Graphic Controls Corp. v. Utah Med. Prods., Inc.*, 149 F.3d 1382, 1386 (Fed. Cir. 1998). The Delaware Supreme Court has not condensed the jurisdictional analysis under Delaware law into a constitutional due process analysis, as some courts have done. Nevertheless, it has said that the Delaware long-arm statute is to be "broadly construed to confer jurisdiction to the maximum extent possible under the Due Process Clause." *Hercules Inc. v. Leu Trust &*

### A. Delaware Long-Arm Statute

The Delaware long-arm statute authorizes jurisdiction over a non-resident when the non-resident, "in person or through an agent," engages in one of the activities listed in 10 Del. C. § 3104(c)(1-6).[6] Rovi must put forward allegations showing that Haier Group, or its agent, has engaged in at least one of those activities to warrant the exercise of

---

*Banking (Bahamas) Ltd.*, 611 A.2d 476, 480 (Del.1992). Given that latter holding, one might wonder why the analysis must proceed in two steps. But that is the analysis called for, and I follow it.

> [6]That statute provides:
>> As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:
>>> (1) Transacts any business or performs any character of work or service in the State;
>>> (2) Contracts to supply services or things in this State;
>>> (3) Causes tortious injury in the State by an act or omission in this State;
>>> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;
>>> (5) Has an interest in, uses or possesses real property in the State; or
>>> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

10 Del. C. § 3104(c).

jurisdiction over Haier Group. Rovi argues that jurisdiction over Haier Group is proper based upon the contacts that Haier Group's subsidiary, Haier Amercia, has had with Delaware,[7] because "the subsidiary acts on the parent's behalf or at the parent's direction." *C.R. Bard, Inc. v. Guidant Corp.*, 997 F. Supp. 556, 560 (D. Del. 1998) (discussing 10 Del. C. § 3104(c)). I agree.

"Under the agency theory, [this Court] may attribute the actions of a subsidiary company to its parent where the subsidiary acts on the parent's behalf or at the parent's direction." *C.R. Bard*, 997 F. Supp. at 560. Delaware courts have traditionally looked at the following factors in determining whether an agency relationship exists between a parent and its subsidiaries: "the extent of overlap of officers and directors, methods of financing, the division of responsibility for day-to-day management, and the process by which each corporation obtains its business. No one factor is either necessary or determinative; rather it is the specific combination of elements which is significant."[8] *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1463 (D. Del. 1991).

---

[7]Presumably, § 3104(c)(3), pertaining to tortious injury in the state, is the subsection on which Rovi relies with respect to Haier America.

[8]"A corporation does not become an agent of another corporation merely because a majority of its voting shares is held by the other. Nor does the fact that a parent and a subsidiary have common officers and directors necessarily indicate an[] agency relationship. The fact that a parent corporation finances the operations of a subsidiary is not sufficient to support a finding that the subsidiary is a mere agent or instrumentality of the parent. However, all of these factors may be considered in determining whether the combination of circumstances indicates such a relationship." *Japan Petroleum Co. (Nigeria) v. Ashland Oil, Inc.*, 456 F. Supp. 831, 841 (D. Del. 1978) (citations and internal quotation marks omitted).

7

It is undisputed here that "Haier Group, upon creating United States subsidiaries, ... [placed] trusted executives already active in Haier entities in China on the boards of directors of ... Haier America ... ." (D.I. 82 at 12.) When Haier America was established, three out of the five spots on the "Board of Directors were permanently reserved for [Haier Group] appointees." (D.I. 80 at 2.) Haier America "established separate operating divisions, each with a President who report[ed] to ... Qingdao [HQ]." (D.I. 80 at 5.)[9]

Rovi further directs my attention to the agreement between Haier America and Haier Group regarding marketing operations. Though it is unclear how Haier America is financing those operations, that is not for lack of trying by Rovi to uncover the facts. Despite continued requests – mostly reasonable – for documents regarding Haier Group's and its subsidiaries' contacts with Delaware, Haier Group has only vaguely addressed the discovery that has been propounded. That stonewalling of relevant discovery leads me to believe that Haier Group is willing to disguise the extent of its contacts with Delaware.

Rovi alleges that Haier America's "board of directors is required to be and is controlled by [Haier Group] executives, who have full and complete authority, power and discretion to manage and control the business, affairs and properties" of Haier America. (D.I. 80 at 5.) Although Haier America has the ability to delegate day-to-day tasks to

---

[9] Based on Haier Group's failure to clarify otherwise, I agree with Rovi's interpretation that "Qingdao HQ" is inherently referring to Haier Group. And, although Haier Group had the opportunity to clarify that "Quindao HQ" did not mean Haier Group, it continued its evasive maneuvers, directing this Court's attention to four other companies that could potentially be interpreted as being "Quindao HQ." (D.I. 82 at 4 n.1.)

"Chief Operating Officer[s]," those officers must report directly to the board of directors controlled by Haier Group appointees. (*Id.*) Further, the board of directors reserves control of "transactions over $100,000 or conducting any litigation activities." (*Id.*) Rovi also points out that Haier America "entered into an agreement titled 'Contract of Branding and Marketing,' with the subtitle 'For Haier overseas trading companies apply or use the branding budget from HQ,'" referring to Haier Group. (*Id.*) That can be interpreted as Haier America soliciting business through the "Branding and Marketing" campaigns that are designed and implemented by Haier Group.[10] That agreement requires that Haier America meet specific sales goals along with other requirements that need to be "reported to Qingdao HQ." (D.I. 80 at 6.)

Haier Group has failed to fully rebut Rovi's proof that Haier America and Haier Group are "operat[ing] in lockstep." *C.R. Bard*, 997 F. Supp. at 560. Rovi has produced sufficient evidence for me to conclude that Haier America was acting and continues to act as an "agent" of Haier Group. *Cf. id.* ("A company that sets up an agent to sell its products, or who creates a network of independently-owned distributorships is 'undoubtedly amenable to suit' in Delaware.").

---

[10] Part of this "Branding and Marketing" agreement is the use of the Haier Group-owned Haier trademark. In permitting Haier America to sell televisions bearing the Haier trademark, Haier Group necessarily must exercise some control over the quality of goods with that mark. *See Doeblers Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 823 (3d Cir. 2006) ("[T]he only effective way to protect the public where a trademark is used by licensees is to place on the licensor the affirmative duty of policing in a reasonable manner the activities of his licensees." (citing *Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 367 (2d Cir. 1959))).

The agency theory allows a court to consider the agent's contacts with the forum state to the extent that the principal's control over the agent relates to those jurisdictional contacts. *See id.*; *Applied Biosystems*, 772 F. Supp. at 1464. Here, Haier America does not contest personal jurisdiction. Thus, to establish personal jurisdiction over Haier Group under the agency theory, I must conclude that the control Haier Group has over Haier America relates to the contacts that Haier America has with the forum state, which is the sale of allegedly infringing products in Delaware through retailers such as Best Buy and Amazon.com.

I conclude that Haier Group's control over Haier America does indeed have the necessary connection to Delaware. First, the overlap of the board of directors demonstrates that Haier Group has control over Haier America's business generally, including in Delaware. Second, Haier Group appears to control the branding and marketing of Haier goods that Haier America sells throughout the United States, including in Delaware. And third, Haier Group owns and controls the trademarks associated with the accused Haier products sold in the United States, including in Delaware. Accordingly, Haier Group has the requisite control over the alleged infringing activities in Delaware to conclude that Haier America's jurisdictional contacts can be imputed to Haier Group and therefore satisfy the requirements of 10 Del. C. §3104©.

### B. Due Process

Turning to the question of Due Process, the inquiry is whether Haier Group, itself or through its agents, has "certain minimum contacts with ... [Delaware] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). Again, Haier America does not dispute that personal jurisdiction over it is proper. And rightly so. It appears to have deliberately directed its commercial activities to Delaware. Accordingly, as its contacts are imputed to Haier Group, and those contacts relate to this patent infringement action, personal jurisdiction over Haier Group satisfies due process.

### V. CONCLUSION

For the foregoing reasons, Haier Group's Motion to Dismiss for Lack of Personal Jurisdiction will be denied.